[Cite as *S. Euclid v. Sneed*, 2015-Ohio-4368.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 102187**

---

# CITY OF SOUTH EUCLID

PLAINTIFF-APPELLEE

vs.

# TERRENCE M. SNEED

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
South Euclid Municipal Court
Case No. TRD 1402005

**BEFORE:** Boyle, J., Stewart, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** October 22, 2015

**ATTORNEYS FOR APPELLANT**

Reginald N. Maxton
8608 Quincy Avenue, Up
Cleveland, Ohio   44106

Oscar Trivers
Trivers & Dickerson, L.L.C.
8608 Quincy Avenue, Up
Cleveland, Ohio   44106

**ATTORNEY FOR APPELLEE**

Brian M. Fallon
Prosecutor, City of South Euclid
1349 South Green Road
South Euclid, Ohio   44121

MARY J. BOYLE, J.:

{¶1} This cause came to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1.

{¶2} Defendant-appellant, Terrence M. Sneed, appeals his speeding conviction. Although he does not specifically state his assigned error, he argues that the city of South Euclid failed "to prove beyond a reasonable doubt all of the facts needed to establish the guilt of the defendant." Thus, Sneed appears to be challenging the sufficiency of the evidence against him. We note, however, that within his argument, he also raises several issues that appear to challenge the manifest weight of the evidence.

{¶3} After a thorough review of the facts and pertinent law, we find no merit to his arguments and affirm the judgment of the South Euclid Municipal Court.

Procedural History and Factual Background

{¶4} In July 2014, Sneed was charged with speeding in violation of South Euclid Codified Ordinances ("S.E.C.O.") 333.03 and reckless operation in violation of S.E.C.O. 333.02(A). Sneed pleaded not guilty to the charges, and the matter proceeded to a bench trial where the following facts were presented.

{¶5} Officer Mark Preztak of the city of South Euclid Police Department testified that he was experienced in using radar in "traffic situations." In this particular case, he used "moving radar." Officer Preztak explained that when using moving radar, "you turn it on, you check the person's speed going in the opposite direction, at least three

times, make a determination whether — how fast you think he's going or not and check it again, and that's the speed."

{¶6} On July 29, 2014, the day that Sneed was charged, Officer Preztak testified that prior to "going out on traffic patrol," he followed the procedures based on his training and experience to ensure that his radar was working properly. Officer Preztak explained the procedure that he was taught to ensure that the radar is working properly. He said that he used "tuning forks" that "go along with the radar," which are set for different speeds. He explained that "you tap the tuning fork on another metal object, it makes a high pitch, and you hold it in front of a radar and press the button and see if it's working properly, see that it gets the accurate speed set for that tuning fork." He testified that he performed these tests and the radar was working properly.

{¶7} Officer Preztak said that on July 29, he observed a black Pontiac Grand Prix traveling at a high rate of speed on Warrensville Center Road. Officer Preztak said that he "checked the speed, turned around on the vehicle as he was pulling away from other traffic, turned around, proceeded northbound down Warrensville." Officer Preztak stated that the vehicle was traveling at a rate of 66 m.p.h. When the vehicle "made a right onto Becksley at a high rate of speed," Officer Preztak said that he caught up to it. Officer Preztak testified that Sneed made another turn onto a side street, immediately "slammed his car into park," jumped out of the vehicle and "opened the hood," telling Officer Preztak that his vehicle was overheating.

**{¶8}** Officer Preztak stated that he charged Sneed with reckless operation as well as speeding because Sneed was traveling at "almost double the posted speed limit" for Warrensville Center Road.

**{¶9}** On cross-examination, Officer Preztak stated that he was traveling "southbound on Warrensville Center, in the second lane from the curb" when he saw Sneed's vehicle, which was in the curb lane, traveling northbound. Officer Preztak agreed that there were other cars around Sneed's vehicle "when he clocked it going 66." But Officer Preztak explained that the other car was only next to Sneed's vehicle "for a moment."

**{¶10}** On redirect-examination, Officer Preztak explained that when "clocking" a vehicle, you turn the radar on and off several times, so you actually "clock it several times." Officer Preztak stated that he did that in this case.

**{¶11}** The court then asked Officer Preztak several questions. In response to the court's questioning, Officer Preztak explained that there was one vehicle "right next" to Sneed's car "in the second lane from the curb and several vehicles behind it." The other vehicles were traveling at the same rate of speed as Sneed, but then "the black Pontiac pulled away." Officer Preztak stated that he checked Sneed's speed several times, and when Sneed's vehicle "pulled away from the other vehicle," he "checked the speed one more time and got the readout." Officer Preztak said that he checked Sneed's speed by radar three times, "[a]nd as the car pulled away, [he] checked it one more," for a total of

four times.   Officer Preztak said that his line of sight was not obstructed by the other vehicles in any way.

{¶12} The city rested.

{¶13} Sneed testified on his own behalf.   Sneed stated that he was not speeding. Sneed explained that it only looked like he was speeding because the driver of the car that was next to his vehicle slammed on the breaks when he or she saw a police car.   Sneed showed a map to the court that he said he drew, attempting to depict where the cars were located when Officer Preztak "clocked" him.

{¶14} Sneed testified that he did "a little research" on radar "shadowing."   From his research, he learned that when there are two cars directly next to each other, radar "bounce[s] from the two cars," giving an improper radar reading.

{¶15} The city called Officer Preztak to testify on rebuttal.   Officer Preztak stated that shadowing was not an issue because he clocked Sneed after he pulled away from the other vehicle.

{¶16} The court found Sneed guilty of speeding, but not guilty of reckless operation.

{¶17} The court sentenced Sneed to a $250 fine, and suspended $50 of the fine. The court also sentenced Sneed to 30 days in jail, suspending 20 days and ordering that Sneed serve ten days in jail on weekends only.   The court further ordered that Sneed serve three months of probation and take a remedial driving course.   The court also imposed costs.

<u>Sufficiency of the Evidence</u>

{¶18} Sneed argues that the city failed "to prove beyond a reasonable doubt all of the facts needed to establish" his guilt. Although Sneed appears to be challenging the sufficiency of the evidence, he also raises arguments regarding manifest weight of the evidence. Thus, we will address Sneed's arguments reflecting both standards of review.

{¶19} An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jenks* at 273.

{¶20} Unlike sufficiency of the evidence, a challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. *Thompkins* at 387. Because it is a broader review, a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence, but nevertheless conclude that the judgment is against the weight of the evidence. *Id.*, citing *State v. Robinson*, 162 Ohio St. 486, 487, 124 N.E.2d 148 (1955).

{¶21} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as a "thirteenth juror." *Id*. In doing so, it must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "'whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id*.

{¶22} Sneed first argues that the only evidence the city presented was "a radar reading," without any independent witnesses to prove that he was speeding. He further argues that the "prosecutor admits that via its only witness" that another vehicle was next to his vehicle at the moment Officer Preztak "clocked" his speed at 66 m.p.h.

{¶23} The city presented Officer Preztak who testified that he took four radar readings of Sneed's speed, including one after Sneed had pulled away from the other vehicles. Officer Preztak further testified that he had calibrated the radar instrument prior to going on patrol that day. This evidence is sufficient, if believed, to find Sneed guilty of traveling 66 m.p.h. in a 35 m.p.h. zone.

{¶24} Sneed's remaining arguments address the credibility of the city's evidence. He maintains that Officer Preztak first testified that he had not heard of "shadowing," but

then testified later that he had heard of it. While Sneed may be correct, this argument goes to Officer Preztak's credibility. "The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trial court, which was the factfinder in this case, heard Officer Preztak's conflicting testimony regarding his knowledge of shadowing and still chose to believe that Officer Preztak took four radar readings of Sneed's speed to properly determine that he was speeding.

{¶25} Finally, Sneed asserts that he testified that he was not speeding and that Officer Preztak obtained an improper radar reading due to shadowing. He contends that the city never presented any evidence to contradict his evidence. Again, we disagree. As we previously stated, Officer Preztak testified that he verified his previous three radar readings with a fourth reading after Sneed pulled away from the other vehicles. This evidence wholly contradicts Sneed's testimony.

{¶26} Accordingly, we find no merit to Sneed's arguments and overrule them.

{¶27} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the South Euclid Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, JUDGE

MELODY J. STEWART, P.J., and
SEAN C. GALLAGHER, J., CONCUR